no reason why they could not have been effectively obtained from the other witnesses called, who seem to have had knowledge at least of the essential facts. It is to be noted, moreover, that the present petition is refused, not so much upon the ground of laches as out of regard for the rights of creditors of the hardware company who are clearly entitled to the first concern.

But it is further said that the creditors of L. M. Alleman should at least be permitted to prove their claims as debts against the hardware company, with which relief it is asserted that they will be content. This was the alternative prayer of the petition, but was abandoned before the referee, as inconsistent with the prayer to have the funds transferred from the one estate to the other. The trouble with that is that in no real sense are these claims debts of the company. The purpose of the proceedings in hand is to avoid the disposition made of his property by L. M. Alleman on account of the fraud involved, and, if sustained, it would only be as to the specific property with regard to which this could be shown. It fails, if for no other reason, because the right to set up the fraud cannot be successfully asserted so long as creditors of the hardware company remain unpaid. If there were an overplus above what was so required, it might be different. But of that there is no hope, even if what is due to Mr. Gitt, as one of the participants in the fraud, were thrown out. The indebtedness of the hardware company is $100,000, of which $38,000 is due for merchandise and $40,000 upon notes in bank, to pay off which the trustees have not half the necessary amount; and from these claims it cannot be diverted in favor of the creditors of L. M. Alleman individually, who have suffered by the fraud.

It will be seen, from what I have thus said, that I do not agree in all particulars with the findings of the referee; but I do with the general result, in accordance with which the petition must be dismissed.

---

## In re KYTE.

(District Court, M. D. Pennsylvania. December 19, 1907.)

### No. 1,035.

1. BANKRUPTCY—ACCOUNTS OF RECEIVER—APPRAISAL OF PROPERTY.
   The fees paid by a receiver in bankruptcy for appraisal of the property, if otherwise proper, will not be disallowed in his accounts merely because the trustee succeeding him deemed the appraisal too low and had a new one made; such proceeding being unwarranted.

2. SAME—INSURANCE BY RECEIVER.
   Insurance on personal property, taken out by a receiver, if paid for by him, is a proper subject of credit in his accounts, but not, if left to be taken care of by the trustee, as a matter inuring to the benefit of the estate.

In Bankruptcy. On exceptions to account of L. F. Camp, receiver.

W. H. Godwin, for exceptions.

W. N. Reynolds, Jr., opposed.

ARCHBALD, District Judge. The exceptions to the appraiser's fees cannot be sustained. They seem large, but there was a good deal of stock to look over, and there is nothing to show that the time for which claim is made was not fully occupied in doing so and the fees in that way earned. It is said that the trustee was not satisfied with the appraisement, and has had a new one made, by which a greater aggregate value has been attained. If additional goods were discovered by the trustee, not included in the receiver's appraisement, it was no doubt proper to inventory and value them. But there was no warrant for an entirely new appraisement of all the property, just because the trustee thought the figures of the first appraisers were not so high as they ought to be. And, if a second appraisement has been made at the instance of the trustee upon any such basis, he may have to bear the expense. The main purpose of an appraisement is simply to get a general idea of the extent of the estate, so as to charge the party in whose custody it is with its value, and at the same time enable all concerned the better to keep track of it. Incidentally it may serve as a guide also to prospective buyers, but it is not to be independently undertaken with that in view, and except for this purpose it is difficult to see what object was gained in going over the same goods a second time.

The insurance taken out by the receiver, which was for a full year, has continued for the benefit of the trustee, and, if the premium was paid by the receiver, it would be a proper subject of credit in his account, any rebate by reason of an earlier termination of it either by a surrender or transfer of the policy inuring in the end to the estate. But the premium, although brought into his account by the receiver, has not been in fact paid by him, and, as the trustee is the one who will really have to take care of it, it should be eliminated here.

The receiver was in charge less than two months, and asks $200 compensation. But, considering the duties which he was called upon to perform and the responsibility which he assumed, this seems a little too large. My judgment is that $150 is enough, and this will be the amount allowed.

The attorney for the receiver also asks for $200, and, as attorney fees go, it may have been earned. But, according to the standard which prevails in bankruptcy matters, $150 is also all that I think should have been asked. The account of the receiver will therefore be modified by striking out the item of $173 for insurance on stock, and by reducing the fees of the receiver and counsel to $150 each. And, as so modified, the account is confirmed.

---

### MUIR v. GREGORY.

(Circuit Court, S. D. New York. November 21, 1907.)

No. 9,079.

GIFT—VALIDITY.

A delivery of bonds by the owner to defendant's husband, since deceased, *held*, under the evidence, to have been as a lawful gift in præsenti and not in trust, so that a gift of such bonds by the donee to defendant vested her with an absolute ownership.